CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ANTRON ADON TUCKER,** | ) | **Case No. 7:23-cv-254** |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **CHADWICK DOTSON,**[1] | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION</u>

Antron Adon Tucker, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2019 convictions in Wythe County

Circuit Court. In response to the petition, the respondent has filed a motion to dismiss to which

Tucker has responded. Dkt. 15, 25. Having reviewed the record, I will grant the respondent's

motion and dismiss Tucker's petition.

### I.   Background

On April 5, 2017, Virginia State Trooper Ashley Crigger stopped Tucker on Interstate 77

in Wythe County. Circuit Ct. Tr. at 56.[2] During the traffic stop, Crigger called for a drug-sniffing

dog, which alerted to the presence of drugs in the vehicle. *Id.* at 62. Crigger's team subsequently

searched the vehicle and found marijuana and other controlled substances. *Id.* at 65. On January

16, 2018, a Wythe County grand jury returned indictments charging Tucker with one count of

possession with the intent to distribute more than one-half ounce but less than five pounds of

---

[1] Chadwick Dotson is the current Director of the Virginia Department of Corrections. Therefore, I will substitute him as the respondent in place of Harold Clarke. *See* Fed. R. Civ. P. 25(d) (permitting the court to order substitution of a public officer's successor at any time).

[2] The state court records submitted in response to the petition include two volumes of records mailed directly from the Circuit Court of Wythe County. One volume includes transcripts of proceedings in the criminal case; the other includes copies of documents filed in the criminal case that are not numbered or in chronological order.
.

marijuana, in violation of Virginia Code § 18.2-248.1; one count of possession with the intent to distribute a Schedule I or II controlled substance, second or subsequent offense, in violation of Virginia Code § 18.2-248; and one count of transporting a Schedule I or II controlled substance into the Commonwealth, in violation of Virginia Code § 18.2-248.01.

On April 10, 2018, the trial court granted Tucker's motion for a continuance and ordered that the case be continued until May 31, 2018. In June 2018, the trial court denied a motion to suppress made by Tucker and ordered that the trial be continued until September 6, 2018. On January 10, 2019, the trial court granted another motion for continuance made by Tucker and continued the trial until January 24, 2019. The trial court also revoked Tucker's bond and ordered that he be held at the New River Valley Regional Jail.

On January 23, 2019, defense counsel moved to withdraw from the case, and the parties appeared for a hearing on the motion on January 24, 2019. The trial court granted the motion, appointed new counsel, and continued the trial to April 2, 2019. Circuit Ct. Tr. at 10. The trial did not proceed as scheduled, however, and the parties next appeared before the trial court on May 8, 2019, for a hearing on motions made by Tucker, including a motion to suppress and motions in limine. During the hearing, the Commonwealth moved to continue the trial from May 30, 2019, to August 7, 2019, based on the unavailability of a witness. *Id.* at 20. The trial court granted the motion over Tucker's objection. *Id.* at 21. The parties appeared for another hearing on August 1, 2019, during which the trial court denied Tucker's motion for appointment of an expert to conduct a forensic examination of Virginia State Police computer records. *Id.* at 24. The trial court also denied Tucker's *pro se* motion seeking dismissal of the charges against him based on alleged violations of his speedy trial rights. *Id.* at 25–26.

The case proceeded to trial on August 7, 2019. Prior to the trial starting, defense counsel raised a double jeopardy challenge that the trial court rejected. *Id.* at 28. That same day, a jury found Tucker guilty of all three charges. *Id.* at 165. On December 5, 2019, the trial court sentenced Tucker to a total term of imprisonment of 51 years. *Id.* at 191.

Tucker appealed his convictions to the Court of Appeals of Virginia. On March 30, 2020, prior to a ruling on the petition for appeal, Tucker filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging that his counsel had "abandoned" him and failed to "proceed with the appeal process." Resp. Ex. E at 6, Dkt. 16-5.  On January 28, 2021, the Supreme Court of Virginia granted the respondent's motion to dismiss the petition and ruled that the record revealed that "counsel did appeal petitioner's convictions to the Court of Appeals" and that the appeal was still pending. *Id.* at 43. Applying the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), the court concluded that Tucker had not met his burden of establishing ineffective assistance of counsel. *Id.* at 43–44.

On August 10, 2020, a three-judge panel of the Court of Appeals of Virginia denied Tucker's petition for appeal and granted defense counsel's motion for leave to withdraw. Resp. Ex. D at 50–55, Dkt. 16-4. Tucker, proceeding *pro se*, appealed to the Supreme Court of Virginia and requested the appointment of counsel. The court granted the request and permitted Tucker to file an amended petition for appeal. *Id.* at 94. On February 16, 2021, Tucker filed an amended petition for appeal in which he raised six assignments of error. *Id.* at 95–124. On October 15, 2021, the Supreme Court of Virginia entered an order refusing the petition for appeal. *Id.* at 160.

On May 26, 2022, Tucker timely filed a petition for a writ of habeas corpus in the Supreme Court of Virginia in which he raised claims of trial error and ineffective assistance of counsel.  Resp. Ex. E at 49–51, 67. Tucker then obtained leave to amend the petition to include

additional legal arguments. *Id.* at 101. The Supreme Court of Virginia dismissed the petition on February 7, 2023. *Id.* at 102–110.

On May 8, 2023, Tucker filed the pending petition under 28 U.S.C. § 2254. The petition, as supplemented on June 15, 2023, asserts the following claims:

1. The Court of Appeals erred in denying Tucker's motion to discharge and forever bar prosecution against him on speedy grounds.

2. The Commonwealth's Attorney violated Tucker's right to any and all discovery under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

3. Tucker's detention is unlawful because he was denied funds for the appointment of an expert to forensically examine Virginia State Police computer records.

4. The Commonwealth's Attorney violated Tucker's constitutional and statutory rights to a speedy trial.

5. The trial court abused its discretion and authority by depriving Tucker of his statutory and constitutional rights to a speedy trial.

6. Counsel provided ineffective assistance by:

   a. not making a timely objection when the Commonwealth's Attorney gave false testimony before the trial court during a pretrial hearing on August 1, 2019;

   b. not objecting at trial to the introduction of discovery material that was not made available to the defense;

   c. not providing Tucker with appeal information and important documents in a timely manner; and

   d. not offering sufficient principles of law and authorities to support arguments presented on appeal.

7. The trial court erred in not barring prosecution on double jeopardy grounds.

8. The Commonwealth's Attorney gave false testimony in order to persuade the trial court in violation of the Due Process Clause of the Fourteenth Amendment.

Pet. at 6–34, Dkt. 1; Pet. Addendum 1–4, Dkt. 8.

## II. Standards of Review

A federal court "shall entertain an application for a writ of habeas corpus" filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is generally required to exhaust all state court remedies before filing a habeas petition under § 2254. *Id.* § 2254(b). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). If a state court expressly bases its dismissal of a petitioner's habeas claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the petitioner has procedurally defaulted his federal habeas claim. *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas court can consider such claims only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

When a claim presented in a federal habeas petition has been adjudicated on the merits in state court, a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," *id.*

§ 2254(d)(2). "In order for a federal court to find a state court's application of [Supreme Court]

precedent unreasonable, the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been objectively unreasonable." *Wiggins v.*

*Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks and citation omitted). Similarly,

"[f]or a state court's factual determination to be unreasonable under § 2254(d)(2), it must be

more than merely incorrect or erroneous. It must be sufficiently against the weight of the

evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)

(citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

   "When a state prisoner seeks § 2254 relief for ineffective assistance of counsel, [courts]

apply the 'highly deferential' *Strickland* standard." *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir.

2022) (quoting *Owens v. Stirling*, 967 F.3d 396, 412 (4th Cir. 2022)). In *Strickland*, the Supreme

Court set forth a two-part test for evaluating claims of ineffective assistance in violation of the

Sixth Amendment. "First, the petitioner must show counsel's performance was deficient and fell

below an objective standard of reasonableness." *Crockett*, 35 F.4th at 242 (citing *Strickland*, 466

U.S. at 687–88). "Second, the petitioner must show prejudice, meaning 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). A court may conduct the analysis in

either order and need not consider both prongs if one is not satisfied. *See Strickland*, 466 U.S. at

697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed.").

When assessing a claim of ineffective assistance through the lens of § 2254(d), the court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("[F]ederal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt v. Titlow*, 571 U.S. 12, 22 (2013)). "This double-deference standard effectively cabins [a federal court's] review to a determination of 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

### III.  Analysis

**A.  Claims of Trial and Appellate Error**

**1.  Claims 1, 4, 5, and 8**

In Claims 1, 4, and 5, Tucker alleges that the Commonwealth's Attorney and the trial court violated his statutory and constitutional rights to a speedy trial and that the Court of Appeals erred in affirming the denial of his motion to dismiss the charges against him on speedy trial grounds. He cites to the state speedy trial statute, Virginia Code § 19.2-243, and the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments. In Claim 8, Tucker alleges that the Commonwealth's Attorney provided "false testimony" during the hearing on the motion to dismiss in order to "persuade the trial court" that Tucker's speedy trial rights had not been violated. Pet. Addendum 3. He claims that the prosecutor's false representation violated his right to due process.

The federal habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)

(quoting 28 U.S.C. § 2254(a)). The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, "mere violation of a state statute is not cognizable as a ground for federal habeas corpus relief." *Watters v. Hubbard*, 725 F.2d 381, 383 (6th Cir. 1984); *see also Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition.").

On direct appeal, Tucker argued that he was not brought to trial within the time period set forth in the state speedy trial statute. *See* Resp. Ex. D at 46, 111. He did not specifically invoke the Sixth Amendment in arguing that the trial court erred in failing to dismiss the charges against him on speedy trial grounds. *Id.* Nonetheless, when Tucker raised violations of his "constitutional *and* statutory rights to a speedy trial" as part of his state habeas petition, the Supreme Court of Virginia found that the issues were barred from habeas review because they were "raised and decided in the trial court and on direct appeal." Resp. Ex. E at 102, 108 (emphasis added). For this reason, I will assume that Tucker fairly presented a constitutional speedy trial claim in state court and address the claim on the merits.

The Sixth Amendment right to a speedy trial is a "fundamental" right "imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515 (1972) (internal quotation marks omitted). In *Barker*, the Supreme Court declined to establish a set time to conduct a criminal trial. *Id.* at 523. Instead, the Supreme Court identified four factors that should be balanced in determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "To establish a Sixth

8

Amendment violation, a defendant must show that the *Barker v. Wingo* factors weigh in his favor." *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011).

The first factor—the length of the delay—serves as a "triggering mechanism." *Barker*, 407 U.S. at 530. A defendant "must allege that the interval between accusation and trial . . . crossed the threshold dividing ordinary from 'presumptively prejudicial' delay. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (quoting *Barker*, 407 U.S. at 530–31). If a defendant makes this showing, the court then considers the length of the delay alongside the remaining factors. *Id.* at 652.

In Tucker's case, the trial began approximately 19 months after the grand jury returned the indictments against him. Although such a delay is not "uncommonly long," *United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir. 2002), it is sufficient to require a review of the remaining *Barker* factors. *See United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) ("One year is the 'point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry.'") (citing *Doggett*, 505 U.S. at 652 n.1).

The second factor—the reason for the delay—does not weigh in favor of Tucker. The trial court continued the trial at least twice at Tucker's request, and the trial had to be continued again when Tucker's attorney moved to withdraw from the case and new counsel was appointed to represent him. Although the trial court granted another continuance over Tucker's objection, the Commonwealth's Attorney requested the continuance based on the unavailability of a witness. As the Supreme Court recognized in *Barker*, "a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531.

The third factor—the defendant's assertion of his right to a speedy trial—also weighs against Tucker. Although Tucker objected to the continuance requested by the Commonwealth on

May 8, 2019, and subsequently filed a *pro se* motion to dismiss the charges against him on

speedy trial grounds, the trial began on August 7, 2019. Since the trial started not long after

Tucker asserted his right to a speedy trial, this factor weighs against finding a Sixth Amendment

violation. *See United States v. Robinson*, 55 F.4th 390, 400 (4th Cir. 2022) (finding that this

factor weighed in the government's favor since the defendant's trial started 100 days after he

asserted his right to a speedy trial); *United States v. Grimmond*, 137 F.3d 823, 829 (4th Cir. 1998)

(holding that the defendant's failure to assert his right to a speedy trial weighed in the

government's favor where he asserted that right four months before the trial began).

The fourth factor—prejudice—also weighs against Tucker. Although prejudice is not

"essential" to the establishment of a violation of the right to a speedy trial, it "is a prime issue

and a critical factor." *United States v. Lozano*, 962 F.3d 773, 781 (4th Cir. 2010) (internal

quotation marks omitted). In *Barker*, the Supreme Court explained that prejudice should be

assessed in relation to the interests for which the speedy trial right was designed to protect: "(i)

to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused;

and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Of these

interests, "the most serious is the last." *Id.* "In general, the defendant must demonstrate actual

prejudice or the credible possibility of prejudice." *Lozano*, 962 F.3d at 781 (internal quotation

marks omitted).

Here, the record reflects that Tucker was released on bond for a portion of time after

being indicted by the grand jury, and he does not allege that the period of pretrial incarceration

preceding trial was oppressive enough to support a finding of prejudice. *See, e.g.*, *Hakeem v.

Beyer*, 990 F.2d 750, 762 (3d Cir. 1993) (noting that the petitioner had "not shown that loss of

employment, disruption of family life or excessive mental anguish resulted from his pre-trial

10

imprisonment"). Likewise, Tucker does not allege that he experienced inordinate anxiety and concern because of the delay in proceeding to trial or that the delay impaired his ability to prepare a defense. The failure to allege any credible possibility of prejudice weighs against his assertion that granting the continuance requested by the Commonwealth violated his right to a speedy trial.

On balance, the *Barker* factors do not weigh in Tucker's favor. The delay between accusation and trial was not uncommonly long, the record demonstrates that Tucker was partially responsible for the delay, and he "has not specified how his case was in any way prejudiced by the delay." *Hopkins*, 310 F.3d at 150. Consequently, the Sixth Amendment claims raised as part of Claims 1, 4, and 5 have no merit and must be dismissed.

The due process claim asserted in Claim 8 is also subject to dismissal on the merits. A petitioner is not entitled to federal habeas relief based on a prosecutor's false statement or improper remarks unless "the comments so infected the [proceeding] as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[T]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights . . . ." *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the [proceeding] would have been different." *United States v. Eckhart*, 466 F.3d 938, 947 (11th Cir. 2006); *see also Ford v. Peery*, 999 F.3d 1214, 1225 (9th Cir. 2021) ("In essence, what *Darden* requires reviewing courts to consider appears to be equivalent to evaluating whether there was a reasonable probability of a different result.") (internal quotation marks omitted).

11

During a pretrial hearing on August 1, 2019, Tucker argued that the charges against him should be dismissed under Virginia Code § 19.2-243, since he had been continuously held in custody for over five months without being tried. *See* Aug. 1, 2019 Tr. at 25; *see also* Va. Code § 19.2-243 (generally providing that a defendant "held continuously in custody" must be tried "within five months" from the date of a finding "that there is probable cause to believe that the accused has committed a felony"). Counsel for the Commonwealth responded that Tucker had only been in custody since May 8, 2019, less than 90 days, and thus that his statutory speedy trial rights had not been violated. *Id.* at 26. The prosecutor also noted that Tucker's previous counsel had filed "many motions" and that several continuances had been granted. *Id.* Tucker then personally corrected the prosecutor's statement regarding his date of incarceration, emphasizing that he had been in custody since "January 10 . . . not May 8." *Id.* After noting that new counsel had been appointed for Tucker, the trial court denied the motion. *Id.*

On direct appeal, the Court of Appeals of Virginia found that the record supported Tucker's "assertion that he was held in custody continuously from January 10, 2019 until August 7, 2019, a period of time that exceeds the five-month deadline in Code § 19.2-243." Resp. Ex. D at 84–85. Nonetheless, the Court of Appeals determined that the delay between January 10, 2019, and April 2, 2019, was attributable to Tucker, either because he moved for a continuance or did not object to the trial being continued following the appointment of new counsel. *Id.* at 85. The state speedy trial statute expressly states that its provisions "shall not apply to such period of time as the failure to try the accused was caused . . . [b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth." Va. Code § 19.2-243;

*see also Young v. Commonwealth*, 297 Va. 443, 453, 829 S.E.2d 548, 553 (Va. 2019) ("The

defendant's failure to object to the court's action in fixing the trial date is an acquiescence of the

fixing of a trial date beyond the five-month speedy trial period and these circumstances

constitute a continuance of the trial date under Code § 19.2-243(4).") (internal quotation marks

and brackets omitted). Since the delays attributable to continuances requested or consented to by

a defendant are excludable under § 19.2-243, the Court of Appeals held that the trial court did

not err in denying Tucker's motion.

For the same reasons, Tucker is unable to establish that the prosecutor violated his right

to due process by incorrectly asserting that Tucker had only been continuously confined since

May 8, 2019. A violation of due process "requires more than a prosecutorial misstatement."

*Ford*, 999 F.3d at 1225. There must be "a reasonable probability of a different outcome absent

the prosecutor's misstatement." *Id.* Tucker is unable to make this showing considering the

excludable time attributable to Tucker. Even if the prosecutor had conceded that Tucker had been

continuously confined since January 10, 2019, there is no reasonable probability that the trial

court would have granted Tucker's motion to dismiss the charges against him under the speedy

trial statute. Therefore, Claim 8 must be dismissed.[3]

### 2. Claim 2

In his second claim, Tucker asserts that the Commonwealth's Attorney violated his

constitutional right to "any and all discovery," including discovery material required to be

---

[3] To the extent Tucker bases his due process claim on the Supreme Court's decision in *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the claim also fails. "Under *Napue*, a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Chavez*, 894 F.3d 593, 601 (4th Cir. 2018) (internal quotation marks omitted). Tucker does not allege that the Commonwealth presented false testimony to the jury. Instead, he alleges that the prosecutor made a false statement at the final pretrial hearing. Even assuming that *Napue* applies in this context, there is no reasonable likelihood that the prosecutor's misstatement affected the trial court's decision to deny Tucker's motion.

produced under *Brady v. Maryland*, 383 U.S. 83 (1963). Pet. at 12. Tucker argues that the information that the prosecutor failed to disclose included the information that he sought to obtain through expert assistance: "[a]ny and all radio and computer communication, between members of the Virginia State Police involved in the stop, detention, search and seizure of Tucker within a period of one hundred twenty (120) minutes of the initial stop of the automobile containing Tucker." *Id.* Tucker contends that the prosecutor's obligations under *Brady* included a duty to investigate Virginia State Police records to determine whether they contained evidence favorable to his defense. *Id.* at 13 (citing *Kyles v. Whitley*, 514 U.S. 419 (1995)); *see also Kyles*, 514 U.S. at 437 (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police").

In his state habeas petition, Tucker asserted that the Commonwealth violated *Brady* by failing to disclose Virginia State Police radio communications relating to the traffic stop, his detention, and the search of his vehicle. Resp. Ex. E at 103. The Supreme Court of Virginia concluded that the *Brady* claim was barred from review under *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (Va. 1974), because it involved a non-jurisdictional issue that could have been raised at trial and on direct appeal and was inappropriately brought for the first time in a petition for writ of habeas corpus. *Id.* Since the procedural rule established by *Slayton* has been held to "constitute[] an independent and adequate state ground for a denial of a state habeas petition," *Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015), the respondent argues that Tucker is not entitled to federal habeas relief.

In response, Tucker argues that the Supreme Court of Virginia "made its decision based on an unreasonable determination of the facts" and that he did, in fact, raise the *Brady* issue on

direct appeal. Resp. to Mot. Dismiss 3, Dkt. 25. The Fourth Circuit has held that the state court's reliance on *Slayton* "does not bar federal habeas review" when a claim has been "fairly presented . . . to the state court on direct appeal, and it was adjudicated on the merits in that appeal." *Kasi v. Angelone*, 300 F.3d 487, 502 (4th Cir. 2002) (internal quotation marks omitted). A review of Tucker's appellate briefs reveals that he did not specifically include the *Brady* issue in his assignments of error on direct appeal. However, he relied on *Brady* in arguing that his motion for expert assistance should have been granted. *See* Resp. Ex. D at 109–110.

I find it unnecessary to decide whether Tucker fairly presented his *Brady* claim to the Supreme Court of Virginia on direct appeal.[4] Regardless of whether Tucker properly exhausted available state court remedies, the claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("We need not decide whether Bland has committed a procedural default, because his argument fails on the merits.").

"In *Brady*, the Supreme Court held that the prosecution's withholding of evidence that was favorable to a defendant and material to guilt or punishment violated the defendant's due process rights." *United States v. Kuehner*, 126 F.4th 319, 330 (4th Cir. 2025) (citing *Brady*, 373 U.S. at 87). The Supreme Court has explained that "the constitutional duty [to disclose under *Brady*] is triggered by the potential impact of favorable but undisclosed evidence," *Kyles*, 514

---

[4] Although "the Rules of the Supreme Court of Virginia . . . provide that '[o]nly errors assigned in the petition for appeal will be noticed by the Court,'" the Fourth Circuit has expressed skepticism with "the proposition that a petitioner *exhausts* for federal habeas purposes only 'assigned' errors." *Jones v. Sussex I State Prison*, 591 F.3d 707, 714 (4th Cir. 2010) (quoting Va. Sup. Ct. R. 5:17(c) and observing that the Commonwealth cited "*no* authority" to support such a proposition).

U.S. at 434, and that it extends beyond evidence in the prosecution's immediate possession to evidence "known only to police investigators," *id.* at 438.

To establish a *Brady* violation, a petitioner "must show: '(1) that the undisclosed information was favorable, either because it was exculpatory or because it was impeaching; (2) that the information was material; and (3) that the prosecution [or its agents] knew about the evidence and failed to disclose it.'" *Kuehner*, 126 F.4th at 330 (quoting *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015)). "Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal' had it been 'disclosed and used effectively.'" *United States v. Wilson*, 624 F.3d 640, 641 (4th Cir. 2010) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "Evidence is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kuehner*, 126 F.4th at 330 (quoting *Bagley*, 473 U.S at 682). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Tucker contends that the Commonwealth's Attorney violated *Brady* by failing to investigate trial counsel's request for radio communications between members of the Virginia State Police involved in stopping, searching, and seizing Tucker. *See* Pet. at 14 (asserting that "if Tucker asked for a specific item within government control and the government, through the Commonwealth's Attorney, refused to investigate, then a *Brady* violation occurs"). However, "*Brady* does not cover evidence that would merely help a defendant prepare for trial but is otherwise immaterial to the issues of guilt or punishment," *United States v. Aleman*, 548 F.3d 1158, 1164 (8th Cir. 2008) (citing *United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976)), and "rank speculation as to the nature of . . . allegedly suppressed materials . . . cannot establish a *Brady* violation," *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019). Because Tucker can

only speculate as to what the requested radio communications might have revealed, "he cannot

satisfy *Brady*'s requirement of showing that the requested evidence would be 'favorable to [the]

accused.'" *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (quoting *Brady*, 373 U.S. at

87); *see also United States v. Savage*, 885 F.3d 212, 221 (4th Cir. 2018) ("Before a court must

conduct an *in camera* review to determine whether there is a *Brady* violation, a defendant must

make a plausible showing that the Government's files contain information that would be both

material and favorable to his defense. Mere speculation that the information may be helpful is

insufficient to justify an *in camera* review.") (internal quotation marks, citations, and brackets

omitted). For these reasons, Claim 2 must be dismissed.

### 3. Claim 3

In Claim 3, Tucker asserts that the trial court erred in denying his motion "for expert

assistance in performing a forensic examination of State Police computers to determine If the

Virginia State Police were already on the lookout for him prior to being stopped." Pet. at 21.

Tucker raised the same claim on direct appeal. He asserted that "the Circuit Court of Wythe

County erred and abused its discretion by . . . [d]enying [Tucker's] motion for expert assistance

in order to forensically examine computer records belonging to the Virginia State Police, denying

him a possible defense." Resp. Ex. D at 37; *see also id.* at 96 (amended petition for appeal to the

Supreme Court of Virginia asserting the same claim). Tucker emphasized that "[s]ince the

members of the Virginia State Police had testified on previous occasions in the record of the case

that they in fact had no advanced knowledge of [Tucker's] possible presence, the only manner in

which this evidence could be elicited is by an expert forensic computer technician [to] be

allowed to access the Virginia State Police database as neither [Tucker] nor counsel possessed

the requisite knowledge to do so." *Id.* at 45. Tucker argued that "[h]ad the [trial court] allowed

such funds to be expended *and such supposition proved to be correct* then it would have brought serious credibility issues upon the Commonwealth's witnesses both as to their testimony and potential sources of their information." *Id.* (emphasis added).

The Court of Appeals of Virginia found Tucker's speculative "supposition" insufficient to establish that the trial court abused its discretion in denying his motion for appointment of a forensic expert:

> "Whether a defendant has made the required showing of particularized need for the authorization of state funds to hire an expert witness is a determination that lies within the sound discretion of the trial court." *Payne v. Commonwealth*, 65 Va. App. 194, 219 (2015), *aff'd*, 292 Va. 855 (2016) (quoting *Commonwealth v. Sanchez*, 268 Va. 161, 165 (2004)). To obtain government funds for an expert, appellant had to demonstrate that "the subject which necessitated the assistance of the expert was 'likely to be a significant factor in his defense,'" and that "he would be prejudiced by the lack of expert assistance." *Id.* at 220 (quoting *Husske v. Commonwealth*, 252 Va. 203, 212 (1996)). To satisfy that burden, he had to show "that 'the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a fundamentally unfair trial.'" *Dowdy v. Commonwealth*, 278 Va. 577, 592–93 (2009) (quoting *Husske*, 252 Va. at 212).
>
> When appellant sought the appointment of an expert, he had already withdrawn his suppression motion challenging the legitimacy of his traffic stop, and there was no suppression motion pending. The lawfulness of the stop was not a defense to the drug charges at trial, and the Commonwealth presented overwhelming evidence of appellant's guilt at trial, including video footage of appellant admitting to the police that he was coming from Georgia, that he possessed drugs, and that he intended to sell them to students on spring break. Even assuming that the legitimacy of the stop would have "materially assisted him in the preparation of his defense," appellant did not demonstrate a particularized need by sheer speculation that the computer records would demonstrate that the trooper had lied at the suppression hearing. "Mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided." *Husske*, 252 Va. at 212 (quoting *State v. Mills*, 420 S.E.2d 114, 117 (N.C. 1992)).

> Accordingly, the trial court did not abuse its discretion by denying
> appellant's motion.

Resp. Ex. D. at 52–53 (brackets omitted). Since the Supreme Court of Virginia summarily

refused Tucker's petition for appeal, *see id.* at 160, the decision by the Court of Appeals of

Virginia constitutes the last reasoned decision with respect to this claim. *See Ylst v. Nunnemaker*,

501 U.S. 797, 805 (1991) (directing federal habeas courts to look to "the last explained state-

court judgment on the . . . claim" at issue).

   Tucker has failed to show that the appellate court's decision was based on an

unreasonable application of federal law or an unreasonable determination of the facts. The

Supreme Court of the United States "has never addressed a . . . defendant's right to a state-

funded nonpsychiatric expert." *Morva v. Zook*, 821 F.3d 517, 524 (4th Cir. 2016). "The Court has

only ruled on an indigent defendant's due process right to a state-funded psychiatrist when he

makes 'a preliminary showing that his sanity at the time of the offense is likely to be a significant

factor at trial.'" *Id.* (quoting *Ake v. Oklahoma*, 470 U.S. 68, 74 (1985)). "Since *Ake*, 'the Supreme

Court has flatly declined to resolve the question of what, if any, showing would entitle an

indigent defendant to state-funded non-psychiatric assistance as a matter of federal constitutional

law.'" *Id.* at 245 (brackets omitted) (quoting *Weeks v. Angelone*, 176 F.3d 249, 265–66 (4th Cir.

1999)).

   In the absence of federal precedent on the issue, the Supreme Court of Virginia has

crafted a "'particularized need' standard" for use in determining "when due process requires a

state-funded nonpsychiatric expert." *Id.* (quoting *Husske*, 252 Va. at 212, 476 S.E.2d at 925. The

Fourth Circuit has indicated that "the *Husske* standard is 'congruent with the requirements of the

federal Constitution.'" *Id.* (quoting *Bramblett v. True*, 59 F. App'x 1, 9 (4th Cir. 2003)). Thus, the

Court of Appeals of Virginia did not unreasonably apply clearly established federal law in requiring Tucker to show a particularized need for the requested forensic expert. *Id.*

To the extent Tucker challenges the appellate court's application of the *Husske* test to his specific case, I find no constitutional violation warranting habeas relief under § 2254(d). The Supreme Court of Virginia "made clear in *Husske* and subsequent cases that 'mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided.'" *Commonwealth v. Sanchez*, 268 Va. 161, 165, 597 S.E.2d 197 (Va. 2004) (quoting *Husske*, 252 Va. at 212, 476 S.E.2d at 925)). Tucker plainly relied on suspicion or supposition in arguing that the trial court erred in denying his motion for expert assistance. *See* Resp. Ex. D. at 45. Therefore, the state appellate court did not unreasonably find that Tucker failed to demonstrate a particularized need for the requested forensic expert, and it did not violate clearly established federal law in affirming the trial court's denial of the request. *See Porter v. Zook*, 898 F.3d 408, 433 (4th Cir. 2018) (rejecting a similar claim on federal habeas corpus review).

### 4. Claim 7

In Claim 7, Tucker alleges that his "detention is unlawful because [the trial court] erred in not barring prosecution on double-jeopardy grounds . . . pursuant to the Fifth Amendment of the United States Constitution." Pet. Addendum at 1. Tucker asserts that his convictions under Virginia Code § 18.2-248(c) (possession with intent to distribute a Schedule I or II controlled substance) and Virginia Code § 18.2-248.01 (transporting a Schedule I or II controlled substance into Virginia) violated his Fifth Amendment protections against double jeopardy because they were based on the "same act." *Id.* at 1–2.

On direct appeal, Tucker asserted that the trial court erred by denying his motion to dismiss on double jeopardy grounds. Resp. Ex. D. at 47. Tucker noted that he sought dismissal

"on the grounds that the elements of . . . § 18.2-248(c) [are] subsumed in the elements of . . . § 18.2-248.01." *Id.* The Court of Appeals of Virginia declined to consider the claim on the basis that the petition failed to comply with Virginia Supreme Court Rule 5A:12(c)(5) because it did not "contain sufficient principles of law and authorities or the record to fully develop appellant's argument." *Id.* at 55. However, when Tucker raised the double jeopardy issue as part of his state habeas petition, the Supreme Court of Virginia found that the issue was barred from review because it "was raised and decided in the trial court and on direct appeal from the criminal conviction." Resp. Ex. E at 102. For this reason, I will assume that Tucker fairly presented the double jeopardy claim in state court and address the claim on the merits.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The double jeopardy prohibition — 'a fundamental ideal in our constitutional heritage' — applies 'to the States through the Fourteenth Amendment.'" *Baum v. Rushton*, 572 F.3d 198, 206 (4th Cir. 2009) (quoting *Benton v. Maryland*, 395 U.S. 784, 794 (1969)). "The Double Jeopardy Clause guarantee consists of three separate constitutional protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *United States v. Bullis*, 122 F.4th 107, 112 (4th Cir. 2024) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Tucker contends that his convictions under Virginia Code §§ 18.2-248(c) and 18.2-248.01 violated the last of these protections—the protection against multiple punishments for the same offense.

To determine whether two offenses charged under separate statutes are the same offense, courts typically apply the *Blockburger* test. *United States v. Whitley*, 105 F.4th 672, 677 (4th Cir.

2024) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see also Commonwealth v. Gregg*, 295 Va. 293, 298, 811 S.E.2d 254, 257 (2018) (discussing *Blockburger*). "The *Blockburger* test 'is essentially one of legislative intent' and 'focuses on the formal elements of the two crimes, finding them to be different offenses if each requires proof of a fact that the other does not.'" *Whitley*, 105 F.4th at 677 (quoting *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988)). "If each offense 'requires proof of a fact that the other does not, the *Blockburger* test is satisfied,' meaning the two offenses are not the same, 'notwithstanding a substantial overlap in the proof offered to establish the crime.'" *Id.* (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977)).

Tucker's convictions under Virginia Code §§ 18.2-248(c) and 18.2-248.01 clearly satisfy the *Blockburger* test. Tucker was convicted of possession with intent to distribute a Schedule I or II controlled substance, second or subsequent offense, in violation of § 18.2-248(c). This conviction required proof of a fact not required by his conviction under § 18.2-248.01, specifically that Tucker had been convicted of a substantially similar controlled substance offense in the Commonwealth of Virginia or another jurisdiction prior to the date of the offense alleged in the indictment. *See* Va. Code § 18.2-248. Similarly, Tucker's conviction under § 18.2-248.01 required proof of a fact not required by his conviction under § 18.2-248(c), namely that he transported one ounce or more of a Schedule I or II controlled substance into the Commonwealth of Virginia with the intent to sell or distribute that drug. *See* Va. Code § 18.2-248.01. Thus, the offenses with which Tucker was charged under the two statutes do not constitute the same offense under the *Blockburger* test.

Additionally, the Double Jeopardy Clause "does not . . . prohibit the legislature from punishing the same act or course of conduct under different statutes." *United States v. Ayala*, 601 F.3d 256, 264 (4th Cir. 2010). "[W]hen a defendant violates more than one statute in a single

course of conduct, a court may impose multiple punishments without violating the Double

Jeopardy Clause if the legislature authorizes it to do so." *Id.* Here, Virginia Code § 18.2-248.01

expressly states that "[a] violation of this section shall constitute a separate and distinct felony"

punishable by a "mandatory minimum term of imprisonment" of three years. Thus, the

legislature specifically authorized cumulative punishment. *See Missouri v. Hunter*, 459 U.S. 359,

368–69 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment

under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . . , the

prosecutor may seek and the trial court or jury may impose cumulative punishment under such

statutes in a single trial."). For these reasons, the double jeopardy challenge raised in Claim 7

fails on the merits.

## B. Claims of Ineffective Assistance

### 1. Claim 6(a)

Tucker asserts four claims of ineffective assistance of counsel as part of Claim 6. In

Claim 6(a), Tucker contends that his trial counsel provided ineffective assistance by "not making

a timely objection when the Commonwealth's Attorney gave false testimony before the trial

court on August 1, 2019 at the final pre-trial hearing." Pet. at 31. Tucker emphasizes that he

argued at the hearing that his charges should be dismissed on speedy trial grounds and that the

prosecutor incorrectly stated that Tucker had only been in custody since May 8, 2019. *Id.* at 32.

Tucker asserts that the prosecutor's "inaccurate testimony was accepted as fact" since his trial

counsel did not object. *Id.*

Tucker raised the same claim in his state habeas petition. The Supreme Court of Virginia

acknowledged that the record supported Tucker's assertion that he had been held in custody since

January 10, 2019, when the trial court revoked his bond. Resp. Ex. E at 104. Nonetheless, the

23

Court held that Tucker's claim of ineffective assistance failed to satisfy either prong of the

*Strickland* test, explaining as follows:

> Counsel could have reasonably determined that it was unnecessary
> to clarify the date of petitioner's bond revocation because
> petitioner himself stated he had been in custody since January 10,
> 2019, and the court appeared to take petitioner's correction at face
> value. Moreover, the court denied petitioner's motion not because
> it found petitioner was returned to custody on May 8, 2019, but
> because some of the delay was attributable to petitioner. Further,
> petitioner does not explain why his speedy trial claim was
> reasonably likely to succeed but for this failure to correct the
> Commonwealth Attorney's statement, given both the trial court and
> the Court of Appeals accepted or appeared to accept that petitioner
> had been incarcerated since January 10, 2019, but nevertheless
> rejected his speedy trial claim because some of the delay was
> attributable to petitioner. Thus, petitioner has failed to demonstrate
> that there is a reasonable probability that, but for counsel's alleged
> errors, the result of the proceeding would have been different.

*Id.* at 105.

The state court's denial of this claim is entitled to deference under 28 U.S.C. § 2254(d).

The decision was based on a reasonable review of the facts in the record and a reasonable

application of *Strickland*. Therefore, Claim 6(a) must be dismissed.

**2. Claim 6(b)**

In Claim 6(b), Tucker alleges that his trial counsel provided ineffective assistance by "not

objecting to [the] Commonwealth Attorney's introduction of discovery material that was not

made available to the defense." Pet. at 31. He asserts that Sergeant Robert Hafley of the Virginia

State Police identified a CD containing recordings from his patrol car's camera that was then

"introduced to the jury at trial," even though "the defense never had a copy of it, nor were they

ever able to view or inspect this CD because it was never provided to them." *Id.* at 32–33. Tucker

argues that his trial counsel provided ineffective assistance by "failing to object to this *Brady*

discovery violation which was plain and obvious." *Id.*

Tucker raised the same ground for relief in his state habeas petition, and the Supreme

Court of Virginia concluded that the claim failed to satisfy either prong of the *Strickland* test.

Having reviewed the record, I conclude that the court did not unreasonably apply federal law or

base its decision on an unreasonable determination of the facts. Sergeant Hafley testified at trial

that he arrived on the scene of the traffic stop after Tucker requested a supervisor, and the trial

transcript reflects that the Commonwealth played video footage depicting Sergeant Hafley's

interactions with Tucker. Even assuming that the video footage was not disclosed prior to trial,

"*Brady* only bars the suppression of *material* evidence" that is *favorable* to the defense. *United

States v. Runyon*, 994 F.3d 192, 209–210 (4th Cir. 2020); *United States v. Caldwell*, 7 F.4th 191,

207 (4th Cir. 2021) ("*Brady* requires the disclosure by the government of evidence that is both

favorable to the accused and material to guilt or punishment.") (internal quotation marks and

brackets omitted). Tucker has not alleged that the undisclosed video footage was favorable or

material, and "[m]ere speculation" that information may be helpful is insufficient to support a

*Brady* claim. *Savage*, 885 F.3d at 221. Because there is no indication that Tucker could have

asserted a viable *Brady claim,* the Supreme Court of Virginia reasonably determined that

Tucker's claim of ineffective assistance fails under both prongs of *Strickland*. Accordingly,

Claim 6(b) must be dismissed.

### 3.  Claim 6(c)

Tucker next alleges that his trial counsel provided ineffective assistance by "not

providing [him] with appeal information and important documents in a timely manner." Pet. at

31. Tucker raised the same claim in his state habeas petition. To support the claim, he submitted

copies of several letters as exhibits. On March 31, 2020, Tucker's counsel sent him a letter

addressed to the New River Valley Regional Jail in which counsel enclosed a petition for appeal

and informed Tucker of his intent to withdraw from the case and request additional time for
Tucker to file a supplemental petition. Resp. Ex. E at 87. On April 14, 2020, counsel sent Tucker
a second letter, also addressed to the New River Valley Regional Jail, advising Tucker that the
Court of Appeals of Virginia had granted the request for an extension of time. *Id.* at 89. On June
2, 2020, counsel sent Tucker a third letter, this time addressed to Augusta Correctional Center,
reminding Tucker to prepare his supplemental petition for appeal. *Id.* at 90. Counsel also
provided Tucker a copy of an amended petition. *Id.*

Based on the evidence presented, the Supreme Court of Virginia concluded that Tucker
failed to satisfy either prong of the *Strickland* test. *Id.* at 107. The court determined that counsel
"made reasonable efforts" to inform Tucker of the status of his appeal by sending him letters at
the regional jail and then sending further correspondence to the state correctional facility after
learning that Tucker had been moved. *Id.* The court also noted that Tucker had alleged "no facts
demonstrating counsel knew or should have known [he] had been moved" and that Tucker had
not identified "any claims or arguments he would have advanced in his supplemental petition but
for counsel's alleged deficiency." *Id.* Likewise, Tucker failed to "explain why a different result
on appeal would have been reasonably likely" had counsel mailed the initial letters to Augusta
Correctional Center. *Id.* Thus, the court concluded that Tucker "failed to demonstrate that
counsel's performance was deficient or that there is a reasonable probability that, but for
counsel's alleged error the result of the proceeding would have been different." *Id.*

Tucker has not shown that the Supreme Court of Virginia unreasonably applied
*Strickland* or based its decision on an unreasonable determination of the facts. He simply
reasserts in a conclusory manner that he "didn't receive . . . important information from counsel
in a timely manner." Pet. at 34; *see also* Resp. Mot. Dismiss at 8 ("Counsel has shown

ineffective assistance for not providing Tucker with appeal information and important documents in a timely manner."). Because Tucker has not identified any additional claims he would have raised on appeal but for counsel's actions, his claim of ineffective assistance must be dismissed. *See, e.g.*, *Davila v. Davis*, 582 U.S. 521, 533 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."); *United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015) ("To show prejudice in the context of appellate representation, a petitioner must establish a 'reasonable probability . . . he would have prevailed on appeal' [but for counsel's alleged error].") (quoting *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000)).

### 4. Claim 6(d)

In Claim 6(d), Tucker asserts that both his trial counsel and his appellate counsel provided ineffective assistance by "not giving sufficient principles of law and authorities to support arguments presented." Pet. at 31. Tucker raised the same claim in his state habeas petition. The Supreme Court of Virginia concluded that the claim satisfied neither prong of the *Strickland* test. Resp. Ex. at 109. The court emphasized that Tucker had not articulated "any principle of law or authority counsel should have but failed to provide." *Id.*

Tucker has not shown that the Supreme Court unreasonably applied *Strickland* or based its decision on an unreasonable determination of the facts. He has not identified any legal principle or argument that, if raised by counsel, would have had a reasonable probability of success, either at trial or on appeal. Tucker's "conclusory and perfunctory" allegations of

ineffective assistance are "insufficient to warrant habeas relief."[5] *Wogenstahl v. Mitchell*, 668

F.3d 307, 335 (6th Cir. 2012).

### IV.  Conclusion

For the reasons stated, I will grant the respondent's motion to dismiss and dismiss

Tucker's petition. Additionally, because Tucker has not "made a substantial showing of the

denial of a constitutional right," I will deny a certified of appealability. 28 U.S.C. § 2253(c)(2).

An appropriate order accompanies this opinion.

Enter:  March 23, 2025

*/s/ Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[5] The same is true for any conclusory assertions of ineffective assistance sprinkled throughout his claims of trial and appellate error. He has not shown that the result of the proceedings would have been different if counsel had made the arguments raised in his federal habeas petition.